v. Patriot Erectors. Ms. Johnson, when you get situated, we can talk about this. May it please the Court, thank you, Your Honors. Thank you, Mr. Simon, for being here as well. So separate trial regarding Mr. White was addressed over time issues. And as you just heard, a lot's been made about Mr. White being a manager, that he had been a manager for a long time, and he was. He was, however, a manager who was paid overtime. So there's no issue in this case that he's exempt or anything like that? There would not be because he was paid on an hourly basis. Okay. So that's good. That is not the issue, correct. He could have been paid on a salary basis, but they gave him an hourly basis. But then they have to comply with the overtime rules, right? Absolutely did. And every person that works overtime should be paid for their overtime. I have no question about that. The issue in this case, if you look at the records in this case, Mr. White received thousands and thousands and thousands of hours of overtime over the years, and I'll just say this, more than I've ever seen in any overtime case, and I've done many of them. I know your Court has heard many of them. And he received thousands of dollars in pay, correctly paid to him for all of that overtime. In fact, I think in 2019, his total pay was up close to $200,000. But the problem is that there was evidence presented to the judge in this case, because this is a bench trial, that there was other overtime hours that Mr. White logged that did not get into the system, but that Patriot knew he was performing. Isn't that the issue? That is the issue. To understand the issue, you have to think about who Mr. White was. He was the manager of as many as 130 people. He was in charge of compensation. He knew all the rules concerning compensation. He knew who to go to to make complaints about compensation, which he never did for himself, but he did for other people. And he had conversations with Mr. Herzog, his supervisor, in which they commiserated about all the overtime that they were logging for Patriot and not being compensated for, correct? Yes, Judge, if I may, and I will answer your question directly. This is a very special case. This is not a case of the typical off-the-clock worker, the person who's told, go do that cleaning, but don't put it down on your time sheet. The person where the company goes and deletes records, where somebody's being coerced or prevented from putting down that time. This is a case about a company that knew that Mr. White was logging a bunch of time and not submitting overtime for, but they knew he was performing overtime. That's what this case is about, isn't it? I disagree. They knew he was putting in a lot of time. They knew he was submitting a lot of overtime, and they knew they were paying him thousands and thousands of dollars in overtime. But they knew that he was performing work for which they were not paying him overtime. Who knew that? You're talking about Mr. Herzog's testimony, correct? Well, Mr. Herzog, among others. I mean, the CEO would receive emails from Mr. White well after regular work times demonstrating that he was working. Doesn't that mean that he would have knowledge of him working overtime? It would mean, yes, that he knows that he's working. No, not necessarily. It means that he knows he's working at various hours of the day. Mr. White made his schedule. He worked when he wanted to. He showed up when he wanted to. Just because you get an email from somebody after hours doesn't mean that you know that that person who's been working for us for 10 years as a manager hasn't put the time in. If you were in the company and seeing all the records that he had, all the time that had been put in, and so on, how would a person naturally come to the assumption, naturally come to the assumption that this person, this knowledgeable person, had not properly put in the overtime that he knew were the rules? There's no question in this case, Your Honor, that the rules were put your time in. There's no question that Mr. White knew that. The only question is, did they somehow know and have an extra duty to do something different than what they did, which was to pay him additional dollars? And again, you made this argument to the judge in a bench trial that maybe they didn't know and he received evidence from Mr. White's side that perhaps they did know, and he believed in balancing the testimony, Mr. White's position. Is that correct? I'm sorry, Your Honor. No. Go ahead. The only testimony that we have from Mr. White, and I will quote it to you, it's in the brief, testimony about talking to Mr. Furzon, who's the only person, and he admitted that he did talk to Mr. White about all the hours he was working. In fact, what he told him in testimony was, go put your hours in. This is Mr. White's testimony. It came up a couple of times. Both of us just joked. Everyone knew, we talked about the Patriot Way. I wouldn't say it was often. It came up a couple of times. A couple of times, Your Honor, if you look at the cases, it's just simply not enough to make an off-the-clock argument stick. It just isn't. If it was, we'd have a gazillion off-the-clock cases that would go on forever. It can't be the rule here. It cannot be the rule here to say that when a manager who is managing other people's time, estimating his own time, when his own records, and if you looked in, I know you've seen it, in the record, he had his own log of time, his own log of time that he kept, none of which was extra time that he supposedly claimed months and months after he had left Patriot. Again, he never raised a complaint about it, never went to anybody in HR, never did the things he was supposed to do under the rules. Is it your position that Mr. Herzog is not a correct person to know this and do something about this? It is my position that just because he talked, okay, Mr. Herzog, yes, had some authority, he could have maybe done something. Right. It's within his job duties to make sure things are going according to the rules at the company. Yes, Your Honor, I agree with you, but this is not, again, the waitress, the administrative person. This is another manager, and when Mr. Herzog told him, go correct it, because he knows how to correct it, with essentially just a call, he could have, he said he could walk down into payroll and could have corrected it. You would assume, manager to manager, sir, please make this fix. That, I don't think, is an unusual or terrible thing for management to assume. The rule, however, is, Your Honor, and the cases show it, that just because it's brought up a couple of times is not enough. There's a case called White, 699 Fed 3rd. I have the page sites of 872 and 876. Employee noted occasionally she missed meal times. This is on page 25 of my reply brief. Occasional comments insufficient in the bulk case. I don't know how to pronounce this person's name. 4PFORR. We find that the trial court erred in basing its finding on such a large number of off-the-clock hours, which this case has. This is not five hours. It's several hours over a two, three-year period. Such a large number of off-the-clock hours on such few incidents of employer knowledge. The basic rule in this circuit, and basically every circuit in the Supreme Court, is when an employer has a rule for time recording, guess what employees are supposed to do? Follow the rule. When the employees don't follow the rule, and that's actually a rule of fairness to the employer, because months and months later, as was the case here, anybody can say anything they want about, I work this hours, these hours, that hours, and I had a couple of discussions with Eric Herzog, in which he told me to fix it. Well, isn't that the problem, though? I think the cases that you're relying on are where an employer has rules in place to record your time, and the employee doesn't record time that way. That doesn't manifest or show any knowledge on the part of the employer, but here we have something different. We have a communication from the employee to his supervisor, communicating that, hey, I'm logging a bunch of overtime, as are you, by the way, and we're not submitting it to Patriot, and so the rule enforcer is the employer, and they're wink, wink, nod, nod, not enforcing that rule. Judge, what I would say is this. If you would please read these cases, and maybe you already have. What they're saying in these cases is, if the employer has the rules, we get the presumption that the rules should be followed. Unless the employer has knowledge that the rules aren't being followed. Right, but an occasional comment to someone, which is the exact words from Mr. White, are insufficient as a matter of law to support a finding of off-the-clock time, particularly when we're talking about tens and thousands, well, I don't know about thousands, hundreds of hours that are being requested as overtime pay. Wasn't it more than just these couple of times? Didn't he also present evidence at trial of the emails he was sending after hours, the emails that he did get in discovery? Yes, Your Honor. Emails were sent to him after hours. Now, I'll say this. None of the emails, in no communication did Mr. White ever get a written communication or verbal communication about don't write your time down. We're going to coerce you. You cannot do this. We're going to take your time off. Those are nowhere in there. Yes, emails were sent in, but as a courts have said, just because you see that a person may be working after hours, so to speak, and remember, this particular person is working whenever he wants. He went into the shop when he wanted. He estimated his time when he was there. He left the shop when he wanted to. Who would know, within Patriot, that these hours weren't captured in the thousands and thousands of hours that he was submitting overtime? That's the issue. Not that there were emails that were sent around. I grant you that. No question about it. But this person was submitting hours that, I mean, even for lawyers might be considered Herculean, a lot of hours, a lot, over and over and over again. And if you see those hours and were paying those hours without any question, he could have submitted any number of hours and they would have been paid. He chose not to, and a personal decision not to pay overtime is just that. That's not on the company who has the rules. Except when it's the Patriot way. And there was evidence in the record that it was the Patriot way. And we have to take that evidence and credit it unless it's clearly erroneous. And so that's the problem here, that it's part of the company subculture and in view of the high management of the company, that this is the way the company works, that you're not supposed to claim it. And so, I mean, and there's a dispute as to whether or not Mr. Herzog himself ever said, go and claim your time. In fact, that's disputed that that was not ever said. So we have to take it that it wasn't said to take the evidence in the case. Two things. One, Mr. Herzog was paid on a salary. Two, this is from Mr. White's words, not from anybody else. It came up a couple of times. It's on page 23 of my brief with the record sites that follow after that. That is insufficient as a matter of law, Your Honor. I would say the Patriot way was a lot of things. The Patriot way was allowing Mr. White to build a jacked up school bus there, which he did. The Patriot way was allowing him to hire his son and bring him in. The Patriot way was to give him six, not three weeks, Your Honor, six weeks of pay during which time he settled his divorce. The Patriot way is a very vague statement, and there's nobody that has said or there's no testimony about the Patriot way being, and don't follow the rules of our timekeeping. You're supposed to follow them. That's the presumption we have. We had no notice otherwise, and I think my time's up, and I apologize. Thank you for your patience. Thank you. Did I reserve five minutes on this, too, I think? Yes, ma'am. Ms. Johnson, you have reserved five minutes of rebuttal time. Thank you. Mr. Simon. May it please the Court, Ms. Johnson. I'm Kel Simon here, again, representing the District Court. This case was tried to the bench. That means, as Your Honor pointed out a minute ago, findings of fact are reviewed for clear error, so if there's disputed testimony, the judge below was welcome to decide those disputes however she wanted to, which becomes important. Patriots . . . the issues, really, that were presented to the District Court and that the District Court had to decide were, of course, whether Robert White worked overtime hours at Patriot that he wasn't paid for, and second, whether Patriot knew that Robert White was doing that and didn't compensate him for those hours. As to the first, there was no dispute. Robert White testified at length about the activities that he engaged in after clocking out from his job at Patriot. He started talking on the phone on his way home. He continued talking on the phone. When he got home, he would take a break to have dinner with his family, and then get right back on his tablet, send emails, monitor what was going on at Patriot. We introduced, at tedious length during the trial, although it was only a two-day trial, emails that Robert White sent during times when we also showed that he was off the clock. There's no dispute that Robert White performed work for which he was not compensated at Patriot. The only other question that the judge had to answer or had to decide was whether Patriot had knowledge that Robert White was doing that off-the-clock work. I printed out for myself, and most of them are quoted in the brief, all the testimony from Robert White and from Eric Herzog, establishing Robert White's conversations with Mr. Herzog showing that he worked off-the-clock. Is it only the conversations with Mr. Herzog that shows the knowledge of Patriot with respect to the overtime, and what is your response to counsel Lopez's argument that they're just too few to be, as a matter of law, sufficient to show that knowledge? I think that's a good question. I don't think they're too few. The way that counsel phrased that, there were a couple of questions. That was out of context of the actual testimony, which I don't have in front of me, but I do have a lot of the other testimony, which is not just a couple of conversations. What Robert White testified to, he was asked by Ms. Johnson at trial, when you talked to Eric, that would be Eric Herzog, and he was commiserating about the hours. I heard you say you don't know whether he told you to clock your time. Robert's answer was, yeah, he didn't. Then Ms. Johnson said, or you don't remember, that's what I want to know. Mr. White testified, I know for a fact that he knew very well. We would talk about it, we would commiserate about being Patriot lifers, and he knew very well that I worked beyond the clock in at the facility and the clock out at the facility, and he did not talk to me about needing to get paid for that. And that testimony is consistent throughout the trial. Is there evidence that Mr. Skor also knew that he was working during off-the-clock times? What's his name, Skor? Yeah, Skor. So Mr. Skor was only Robert's supervisor during the last three months. But for that three months, he knew that he was working. Is there evidence in that? He knew that he was working late hours, because He didn't know he was off-the-clock? I don't know if he knew he was off-the-clock. So this gets to the actual knowledge versus constructive knowledge question. I think that with Mr. Skor being willing to call Robert after Robert left the facility and while he was on his way home, coupled with the fact that Patriot had no policies in place, no rules about recording time that you spent out of the facility, Mr. Skor, and again, because Patriot had no training and no policies promulgated to the employees about how to track their time or what supervisors are supposed to do with time. So let's assume that that's a reasonable inference to make that even Mr. Skor might have been aware that Mr. White was logging overtime. How do you respond to counsel opposite's argument that, well, Mr. White was paid overtime. So how do we know that he wasn't paid for those hours? Sure. He was paid a lot of overtime, but all of it was overtime that he worked while he was clocked in at the facility. So he definitely, there's no dispute, he knew how to enter his shift off to the administrative assistant to get paid for all of that time, but that's only time when he worked at the facility, and the undisputed testimony is that he told Mr. Herzog on numerous occasions about the hours that he was spending off the clock out of the facility. With the clock in at the office, can you tell that differently if you're HR from somebody sending a follow-up email, by the way, I did four hours last night because the plant was closed, and I had to give a lot of extra work on my iPad. I mean, is that how you would record that time, or how would you record that time? I think that he probably could have included it on the time sheet that he sent to the . . . So it's a time sheet. So he's not doing a clock in kind of automatic . . . Correct. Right, right. He's just keeping track of his time himself on a spreadsheet, and then sending it in. Then how would the company know that he wasn't including that time? The company knew it because he told Eric Herzog that he wasn't. And the fact that Mr. Herzog knew that he was working off the clock should have triggered Mr. Herzog saying, well, first of all, you can't do that. Second of all, I'm going to need to talk to HR to find out how we get you paid for the time that you have been working off the clock. But none of those conversations ever occurred because, as Robert testified, he didn't know that it was a violation of the law for the company not to pay him for the time that he worked away from the facility. And Eric Herzog probably didn't know that either because nobody at Patriot ever got any training about the wage and hour laws. Robert testified he got training about safety, about harassment, about all kinds of things, but was never trained on Because Robert supervised a lot of people, he was also never trained that he was supposed to make sure that the people working under him were getting paid for all of the hours that they were working off the clock as well. Robert simply didn't know that it was a requirement that the company pay him for the time that he didn't work. And that's why I think he could sit there and joke around with Eric Herzog. If I actually got paid for all of the hours that I worked, I would be making a lot more money than Mr. Herzog saying, ha ha, even though I'm on salary, if I got paid hourly for all my time, I'd be making a lot more money too. It was just a, you know, everybody at the company knew that Robert worked a lot of hours, and we certainly don't have a dispute about that. That doesn't mean everybody at the company knew that he was not getting compensated with In the district court's opinion, and I think for this court as well, I think that the constructive knowledge on the part of the company is a much closer question than the actual knowledge. Actual knowledge through Mr. Herzog is the best place to go. Yes, actual knowledge through Mr. Herzog is the best. Mr. Herzog was his boss, and I think that's important, even though they would, and they saw each other every day and talked every day. Even though Mr. Herzog would joke about, with Robert White, you know, oh, we're not getting paid for all of our time, Mr. Herzog was a manager and an upper-level manager at Patriot, because, you know, if you look at the organizational chart that I believe is in evidence, Mr. Herzog was right underneath Parley Dixon, who was the president and CEO of the company, so Mr. Herzog, as an upper-level manager, was on notice that he had somebody working under him who wasn't getting paid his overtime for hours worked off the clock. The cases that Patriot refers to, and there's quite a few of them in their brief, I want to discuss those just briefly, because Patriot seems to be arguing here that because Robert knew how to enter his time, and nobody expressly told him, oh, don't enter that time, because you're not going to, you know, that's going to get you in trouble, or that there were some kind of rules out there that Robert was supposed to follow. There weren't any of those, and so Patriot argued, for instance, that nobody instructed Robert not to report his time, and nobody prevented Robert from reporting his time, and that instruction and preventing him from reporting his time, and so that's the main argument Patriot cites in support of the Miller v. Texoma Medical Center case, but all that case really says is that there was no evidence that the defendant was aware that the plaintiff worked overtime hours, and this is the theme through all of the cases that Patriot cites, because there's nothing in the law that says that if the employee is not instructed not to report his time, he can't later on claim it as unpaid overtime. It's simply some evidence that the employer might know he's not being paid overtime. That's all that the regulations require, and there's specifically, and these are cited in the brief, that there's three regulation, three parts of the Code of Federal Regulations that are just key here, and these have been adopted by the Fifth Circuit in the Newton case, I think, as early as 1995. 29 CFR 785.11 says the reason why the employee is working off the clock is immaterial. If the employer knows or has reason to believe he's continued to work, that time is working time, and then the next section, 785.12, again says if the employer knows or has reason to believe that the work is being performed, he must count the time as hours work, and then 29 CFR 785.13 gets directly to the issue that Patriot raises here of, oh, we had a rule. Well, the testimony about the rule was very much disputed, and Patriot did not produce a copy of any document that says you're to report your time, even if it's work that you did outside of the facility, but this code section, 785.13, which is in the brief, says the mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make any—sorry, must make every effort to do so, and the regulation also provides that it's the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed. So the real question is whether the employer knew. Yes. And you're saying the employer knew because of the conversations with Herzog. Exactly. And Ms. Johnson is saying that those are too few to count, and you're saying the evidence was that it was a lot, and the judge below made that call. Sure. I think even if there had been just one conversation . . . It doesn't have to be a certain amount, does it? I don't think so. I mean, I think all Robert has to say is exactly what Eric Herzog says he said. I'm not recording all my hours. Even one time would give him the thing to say, oh, my gosh, I better go to HR and do a memo on this and get them to send out a notice to the whole company and have him in and go over this immediate—this would be a big deal for a manager to hear from a subordinate. I better make sure we're not breaking the law. That's how I would . . . So let me ask a question about the estimate of hours, the number of hours, because as I understand it, Mr. White, you have all this evidence of after-hours emails, after-hours calls, maybe accessing the computer for the camera in the shop, all of that occurring. So as you say, there's no dispute with respect to hours after he's left the facility. There might have been a dispute with respect to whether he was compensated for those hours, but that dispute was presented. Now it comes to quantifying this, and all we have is the testimony of Mr. White, hey, probably about eight hours a week, very conservative estimate, probably more than that. Is that all we have? Well, we have the emails that back that up. We have his emails up until I believe it was June or July of 2018 when they didn't have any more of his emails that they could produce to us. So we only have, within the limitations period, the first year worth of emails, and Robert testified that those—he didn't believe those were all of the emails that he sent, but those emails established that he was working off the clock. But he also testified that only about 25 percent of the work that he performed off the clock was work that he did by email. He testified that the rest of it was done by phone, because a lot of times he would get a phone call that would require him to go into his email, check other things within the files. Since he could remote in on his Surface, he was able to get into Patriot's computer system and see everything that he needed to do. So he figured out, based on his recollection of the amount of work that he actually performed while he was at home, that eight-hour estimate. And the Fifth Circuit law is clear from that Mount Clemens Supreme Court case that if the employer's records are inadequate, the employee's estimate of the number of hours worked creates a just and reasonable inference. Patriot could have attempted to refute that inference by, you know, cross-examining Robert or producing some evidence that, hey, you didn't really work these hours. They didn't have his phone records. As I mentioned earlier, he had to turn in all of his electronic devices, so he didn't have access to his phone at the time that we filed this lawsuit. They never produced—it was a company phone. They never produced his phone records, although we requested them. They never produced the emails after June or July of 2018. So all we have to go on is Robert's testimony about how many hours he worked. The Court credited that, and Patriot didn't attempt to refute it. As supported by the emails that you did have produced to you. Yes, yes. And I think if we had spent any more time going over those emails, I think the Court would have gotten very salty with us, because as it was, as I said, they were fairly tedious. I will just say again that all of the cases that Patriot puts into their brief, the—I already went over the Miller case. The Jones-Turner case was the case that Patriot cites for the idea that Robert didn't complain about never having been paid unpaid overtime. But again, all that case says is that the employer didn't have actual or constructive knowledge. So again, all of these Fifth Circuit cases and cases within the district courts in the Fifth Circuit are addressing the question of whether the employer had actual or constructive knowledge. If the employer had that knowledge, then there's no way that they can avoid having to pay the overtime for it. I think getting back to Judge Elrod's question about what's the best evidence for the knowledge, I think the actual knowledge on the part of Mr. Herzog is reasonable. I think the district court also reasonably found that there was constructive knowledge, but I think the most that the court could do, if the court are inclined to not find that there was constructive knowledge, is potentially to take away those last three months of overtime pay when Herzog was no longer Robert White's supervisor and Swore became his supervisor, because even though Swore knew that he was sending emails quite late into the night, as did the other upper level managers, there's no direct evidence that they knew that he was doing it while he was off the clock. And again, I would suggest that in a company where there hasn't been any training rules, policies, anything addressing off-the-clock work, a manager would be remiss if they didn't go in and say, hmm, somebody's sending an email at 1.30 in the morning. I wonder if you're not conceding that there wasn't constructive knowledge for even those last three months of Mr. White's employment. I mean, I think that it's easy to say that there was. Not only because Mickey Swore— Tell me what that is. Not only did Mickey Swore know that Robert White was sending those late emails, and of course, we don't have any of those emails from the last three months of his employment because Patriot no longer had them at the time that we requested them in discovery, but Robert testified that he had a regular practice of always copying very upper level management, including Parley Dixon, on the communications that he would send. How in the constructive knowledge arena do we establish that the overtime hours that maybe are reflected in these emails that we don't have, Mr. Swore? Sure. It would be easy to go and look at Robert's time records because they say, you know, on this day he was paid for 6 a.m. to 6 p.m., and then he would send an email at 10 o'clock at night. So if anybody had gone and looked to see whether he was clocked in— What record shows that he was paid from 6 a.m. to 6 p.m.? His time records are all in evidence, and it's the actual time records that are based on his communication of the hours through that spreadsheet that he's— And they didn't raise any issue on these three months, did they? No, Your Honor. They just—I mean, they're— They just accepted that this was the universe of overtime that needed to be paid, but said, oh, we don't think it needs to be paid because he didn't turn it in, and he should have turned it in. Correct. Yes. I see my time is up. I appreciate the Court's time. Thank you. Thank you. To address a few things. We do have policies. They are in the record. Our personnel handbook is in there. Even if there wasn't a written handbook, Mr. White surely knew what the time recordings and requirements were. But it's my recollection that the provision regarding recording time was in a revision of the personnel handbook that might not have been in place at the time that Mr. White was recording or supposed to be recording this overtime. During his testimony, Your Honor, he verified that the handbook that I showed him had the particular name of Patriot. It went from an LLC to an Inc. or an Inc. to an LLC, I believe, and whatever it had been at the time, which was, I think, the LLC, was on there, and it did clearly have those things in there. Regardless, he knew what had to be recorded. He knew what his people had to be recorded. He knew that—and if it's just on clock in and clock out, why is he estimating time? Your Honor, I would also say, you know, who would know? He's recording 15 hours, 16 hours, 20 hours, 10 hours, 8 hours. It goes up and down like a yo-yo. Well, but I thought—I heard from counsel opposite that the Patriot would know because it would show that he's recording time from 6 a.m. to 6 p.m., and they're receiving emails that occur after hours. They're receiving phone calls that occur after the 6 p.m. period. Why wouldn't they know on the basis of that? Your Honor, but the time is recorded by computer. Mr. White has a computer that he has. He can see PNN at any time, and it doesn't come up as when the hours occurred. It comes up as to what the hours are input. He could have put in any time he wanted to. And if you look at his own records, records of the time in question when he's saying he is not getting paid for overtime, and the emails, you know, some of them show it, some of them don't show it at all, but regardless of that, his own records have not a word, nothing, not a scribble on the side, work three extra hours. Nothing is in his record, his own personal log that would reflect additional time. I would take the Court to the cases I have cited on page 12 of my brief in which things like, these are cases around here in Texas and elsewhere that say seeing an employee work early is not the same as knowing they haven't recorded their time. That's what was going on here. Knowledge of weekend work did not equate to knowledge of uncompensated time. We had a policy in place. He knew what that policy was. He should have recorded the time. The only time that constructive knowledge comes into play is when somebody actually is told there's something going on here. And by the way, Your Honor, if you read the brief, to get away from these issues of policy, you must follow the policy, they have to show, not shown, coercion. They have to show prevention, not shown. They have to show a whole panoply of things that never happened. All we know is the exact testimony that Mr. White stated, which was I talked to Eric Herzog a couple of times. The cases that are cited in the brief, and I invite the Court to look at those cases very clearly because what we're doing right now is saying that an employer cannot rely on the records that Mr. White verified as a manager, as a manager that he verified as the time. I think what we're also saying is that an employer must rely on its supervisors of employees when they've had communicated to them the fact that that employee is not logging overtime. Yes, but the cases go into the fact that if I'm off-handedly telling you at time or two something is, you know, I didn't record my time, and there's a discussion that's limited to the degree, that's not sufficient, Judge. It just isn't. It can't be sufficient to get over the fact that we have time-reporting policies that he knew he had to follow. Let's see here. He had a computer at home. He could VPN as he wanted to. He knew what the time was. No one knew what he was recording except himself because he was in charge of all that recording, and the most knowledge we ever got was it came up a couple of times, and that as a matter of law, it's simply insufficient to get over the fact we had a policy, he didn't follow it. Thank you, Your Honor, for your time today. Thank you. We have your argument. Thank you, Ms. Johnson. Mr. Simon, this case is submitted. The court will stand in recess until—